632 So.2d 88 (1994)
Gregory L. CLARK, Appellant,
v.
STATE of Florida, Appellee.
No. 93-0293.
District Court of Appeal of Florida, Fourth District.
January 26, 1994.
*89 Richard L. Jorandby, Public Defender, and David McPherrin, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Don M. Rogers, Asst. Atty. Gen., West Palm Beach, for appellee.
PARIENTE, Judge.
Defendant appeals his conviction of battery on a police officer, a lesser included offense of aggravated battery on a police officer. Defendant complains of improper admission of evidence concerning the police officer's injuries and improper prosecutorial argument concerning the veracity of the police officer's testimony. We reverse.
The defendant was charged pursuant to sections 784.045(1) and 784.07(2)(d), Florida Statutes (1991) with aggravated battery on a police officer by using a deadly weapon while committing the battery. The alleged deadly weapon was defendant's pit bull. The critical factual dispute was whether the defendant intentionally dropped the leash, allowing his dog to bite the police officer.
Pursuant to section 784.045(1)(a), Florida Statutes (1991), there are two ways that a person can commit aggravated battery: (a) by intentionally or knowingly causing great harm, permanent disability or permanent disfigurement while committing a battery or (b) by using a deadly weapon while committing a battery. In charging the defendant with subsection (b), the state was precluded from introducing evidence about the victim's injuries since only aggravated battery by intentionally causing great harm allows evidence of injuries. See Edwards v. State, 530 So.2d 936 (Fla. 4th DCA 1988), *90 aff'd, 548 So.2d 656 (Fla. 1989) (error for trial court to admit evidence from two police officers and the attending doctor, concerning the details and extent of the victim's injuries); Webb v. State, 609 So.2d 728 (Fla. 5th DCA 1992); Gissendanner v. State, 570 So.2d 421 (Fla. 1st DCA 1990).
While the state concedes that only aggravated battery by intentionally causing great bodily harm requires evidence of the injuries inflicted, the state argues that the error in this case is harmless, relying on Lee v. State, 444 So.2d 580 (Fla. 5th DCA 1984). In Lee, the defendant was also charged with aggravated battery "by use of a deadly weapon, to wit: Tae-Kwon-Do." Id. at 581. Evidence regarding the victim's injuries was improperly admitted. The Lee court held the error in its case harmless not only because it was clear a battery had been committed, but also because it could not determine that the jury was, or could have been, inflamed enough to reach an unjust or incorrect verdict or that the accused was unduly prejudiced. This test is inapplicable since State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Lee was decided before State v. DiGuilio and thus DiGuilio sets the proper standard for analyzing harmless error.
Also, contrary to the facts in Lee, the evidence in this case is not clear that a battery occurred. In order to find that the defendant committed a battery upon the police officer by the use of his pit bull, the jury had to find that defendant intentionally dropped the leash, thereby allowing the dog to bite the officer. The evidence on that point, however, is disputed. On the one hand, the police officer-victim and another police officer testified that defendant intentionally dropped the leash. However, defendant's family, also eyewitnesses, testified that defendant did not drop the leash. Defendant stated that he neither threatened the officer, nor tried to strike him, but that he held the dog the entire time.
We must further consider the nature of the testimony and the method in which it was used by the prosecution in evaluating whether the error was harmful. The police officer testified that it was painful when the dog bit him. He described the wounds for the jury as puncture wounds and teeth marks on the side of his leg and indicated that he received medical treatment at a hospital. During his testimony, the police officer showed the jury the scars on his leg. Eighteen photographs of the wounds, taken immediately after the incident, were also introduced into evidence. Further, the state referred to the scar and the 18 photographs in closing argument:
What we know from the facts is that because letting the dog loose on the officer there was pain and injury inflicted on the officer. You saw scar tissue on the officer on his knee and on the 18 photographs that were taken, and you saw the puncture wounds  and you'll have an opportunity to take those photographs with you  on the police officer.
Clearly, the nature and extent of the police officer's injuries became one of the features of the trial utilized by the state to obtain a conviction.
The injection of the testimony and photographs about the police officer's injuries may have assisted in swaying the jury against the defendant's version and tipping the scales in favor of the state. We cannot agree, as contended by the state, that the defendant's introduction of photographs of his dead pit bull, shot by the police officer after the attack, negated the prejudicial effect of this evidence. In a close case where proof of the offense boiled down to a swearing match, we cannot state beyond a reasonable doubt that there is no reasonable possibility that the error in admitting evidence of the victim's injuries contributed to the conviction. DiGuilio.
Because this case will be remanded for retrial, we also address the issue of the prosecutor's closing remarks concerning why the police officer's testimony should be given greater credibility than those of defendant's and his family. The case boiled down to the credibility of the witnesses as to whether the defendant intentionally released his pit bull's leash, or whether, as defendant testified, the police officer came too close to the pit bull while approaching the defendant with his baton drawn. The witnesses' credibility was *91 pivotal to the case, with the jury required to choose between competing versions of the truth. Against this backdrop, the prosecutor made the following closing argument remarks:
There is a significant issue in this case. The significant issue is the most basic and easiest, the one that you are going to be fighting with, and when you hear all the argument you are going to be arguing about, someone is not telling you the truth. Could it be the cops, the law enforcement officials, the guys that are out there whose job is to protect and to serve, is it possible that these people are lying to you?
A short while later, the prosecutor stated:
[W]ould they [the police] actually put their credibility with this Court, put their jobs on the line by coming in here and risking getting caught by not telling the truth in reference to one of their law enforcement cases? Does it mean that much that they would do that? Would they have taken it this far, what is their incentive to lie?
Although the comments were not an affirmative statement of the prosecutor's belief in the veracity of the police officer witnesses, compare State v. Ramos, 579 So.2d 360 (Fla. 4th DCA 1991), Buckhann v. State, 356 So.2d 1327 (Fla. 4th DCA 1978), the prosecutor's argument constitutes an inappropriate attempt to persuade the jury that the police officer's testimony should be believed simply because he or she is a police officer. Garrette v. State, 501 So.2d 1376, 1379 (Fla. 1st DCA 1987); Houston v. State, 394 So.2d 557 (Fla. 3d DCA 1981). In no uncertain terms, the prosecutor's argument was that police officers would not testify falsely because they have too much at stake and would not risk their jobs.
In addition, the argument makes reference to matters outside the record and constituted impermissible bolstering of the police officer's testimony. See Landry v. State, 620 So.2d 1099 (Fla. 4th DCA 1993) (query as to why the police officers would risk all their years and their unblemished records improperly constituted impermissible bolstering of officers' testimony by matters not supported by the record); Valdez v. State, 613 So.2d 916 (Fla. 4th DCA 1993) (comment that police officers stand between us and "anarchy" improperly focused jury's attention on matters outside the record).
We do not need to reach the issue of whether these comments would otherwise constitute reversible error due to the failure to object and move for a mistrial, since we are reversing on the improper admission of the photographs of the injuries and testimony concerning the police officer's injuries. Compare Houston. See also State v. Cumbie, 380 So.2d 1031 (Fla. 1980); Clark v. State, 363 So.2d 331 (Fla. 1978). We do note, however, that in conjunction with the testimony, photographs and closing argument concerning the injuries suffered by the police officer, these comments may have affected the verdict in a case where the credibility of the witnesses was central to the issue of whether the crime of battery occurred.
We remand this cause for a new trial, noting that on remand, the defendant can only be retried for simple battery on the police officer, the lesser included offense of which he was convicted. See Williams v. State, 597 So.2d 377 (Fla. 2d DCA 1992); Craft v. State, 441 So.2d 704 (Fla. 2d DCA 1983).
REVERSED AND REMANDED.
WARNER and KLEIN, JJ., concur.