384 So.2d 967 (1980)
Danford FRANCIS, Jr., Appellant,
v.
The STATE of Florida, Appellee.
No. 78-2151.
District Court of Appeal of Florida, Third District.
June 24, 1980.
*968 Bennett H. Brummer, Public Defender and Peter Raben and Herb Smith, Asst. Public Defenders, Miami, for appellant.
Jim Smith, Atty. Gen. and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before HUBBART, J., and CHAPPELL, BILL G., Associate Judge and PEARSON, TILLMAN (Ret.), Associate Judge.
PER CURIAM.
Defendant, Danford Francis, Jr., was convicted of armed robbery, and he now appeals on the ground that a mistrial should have been granted due to the prosecutor's closing remarks as to his personal belief in the credibility of the identification witness, Beamer Burley.
These remarks[1] in which the prosecutor asserted his personal opinion as to the credibility of the witness, Burley, appear to be in violation of DR7-106(C)(4) Code of Professional Responsibility, but under this rule he may argue, on his analysis of the evidence, for any position or conclusion with respect to the credibility of a witness. The question, thus raised, is whether the remarks are of such a prejudicial nature as to warrant a reversal. We think not.
In his final argument, defense counsel strenuously attacks the prosecutor for apologizing for Beamer Burley, and he urges the jury to challenge the prosecutor to explain why he did so. Likewise, he gave his analysis of the testimony of Beamer Burley by stating,
"... He picks the man out. He thinks that's who robbed him. That's what Beamer Burley thinks. He is not lying to you. He is not getting up there and lying for a spiteful reason. He picks the man out who he thinks robbed him ..."
We cannot accept the argument that the prosecutor's statement, "I think he is truthful", is a highly prejudicial and unfair *969 statement constituting reversible error when defense counsel reviews the testimony of the same witness and states, "He is not lying to you."[2]
In reviewing defendant's claims of other improper remarks, we also fail to find the prosecutor's remarks concerning the absent police officer[3] to be suggestive that other evidence of an incriminating nature would be available if he were present. By stipulation between counsel, the officer's report was to be admitted in evidence, and the record reveals that both the prosecutor and defense counsel had referred to the officer's absence in their opening statements. Further, during the State's presentation of the case, the court instructed the jury that if the officer was present, he would testify consistent with his police report which was in evidence.
Lastly, we consider defendant's claim that the prosecutor improperly argued his guilt or innocence on two separate occasions.[4] Though the rule definitely prohibits improper argument as to the guilt or innocence of an accused, we must review the record to see if there is an acceptable basis to support the remarks made in this particular case, and we must decide whether such remarks deprived the defendant of a fair trial upon consideration of the entire record.[5]
Our review of the record shows that during his opening statement, defense counsel asked the jury to pay careful attention to the testimony of Detective Heatherington regarding the photo identification procedures which were employed in this case because it is very unusual. Obviously having been forewarned that defense counsel would argue this subject in his closing argument, the prosecutor spoke to this matter in his opening summary. Likewise, the statement concerning fingerprints was in direct response to final argument for the defense.[6]
In considering the total record of this case, we find that the prosecutor's expressions of opinion as to the credibility of the witness, Beamer Burley, individually or collectively, were not so tainted as to lead a jury to a wrongful verdict and that any possible harm was properly nullified by the curative instruction given by the court.[7] Further, we find ample basis in the record *970 to support the other remarks complained of.[8]
The trial judge acted properly in not granting a mistrial.
Affirmed.
NOTES
[1] Defendant complains of prosecutor's remarks in final arguments on three separate occasions:

a. "... He said, `Those particular words he used up there, I didn't hear the accent on', and he is trying to be truthful, but it would have been very easy for him to simply say, `Yes, I heard the accent', but I think he was being very truthful to you, and he was trying to tell you exactly what he perceived. .. ."
b. "... I don't think Beamer Burley . . here he is, under subpoena to come in and testify, and I don't think he really feels this case ... I don't think he really is that interested in it, but he is testifying as a State's witness, and he testified as to the truth ..."
c. "... Now, Beamer works in an adult theater, but he sat down before you, and I think you could see this is a guy that has worked a long life, and he is doing his own job, too, and I think he is a moral fellow, and I think he is truthful ..." [Here, the court gave a curative instruction.]
[2] Compare Arline v. State, 303 So.2d 37 (Fla. 1st DCA 1974).
[3] In final argument, the prosecutor said,

"... The State wanted the report. Mr. Smith [defense counsel] wanted the report in for argument that he made on his cross-examination. We didn't have the officer. It would have been nice to have him. I would have liked to have him, but he was sick for that ..."
[4] In opening final argument following his comments summarizing the involvement of the witness, Detective Heatherington, the prosecutor said,
"... I don't think you have ever seen anything in this entire trial that indicates to you that anybody is full of vengeance  is full of vengeance in this particular case, and even if Beamer Burley wants to see the man that struck him across the cheek and knocked him unconscious and stole his watch and stole his money  if he wants to see that person put in jail, my God, that man has got a conscience just like you all do, and he doesn't want to put the wrong person in jail ..."
b. In closing his final argument and referring to final argument of defense counsel, the prosecutor said,
"... He says `Fingerprints.' Why didn't we have the I.D. come in and testify here that there was nothing; otherwise, what are we trying to do? Do you think this is a subterfuge on the part of the State here that we are trying to protect some guilty party and railroad some innocent party here, that we are trying to keep evidence? ..."
[5] Darden v. State, 329 So.2d 287 (Fla. 1976); Collins v. State, 180 So.2d 340 (Fla. 1965).
[6] In closing argument, defense counsel stated,

"... They have an I.D. Unit go all the way out, dust for fingerprints, lift latents, and then try to take some comparisons and not be able to make a comparison. Why didn't they bring the I.D. Unit in to say, `I lifted fingerprints. Here they are. Let me show them to you, and they are not of any value'? Because it's not necessary. It's not important for the State ..."
[7] Johnson v. State, 348 So.2d 646 (Fla.3d DCA 1977); Frierson v. State, 339 So.2d 312 (Fla. 3d DCA 1976); Sanders v. State, 241 So.2d 430 (Fla. 3d DCA 1970).
[8] Darden v. State, 329 So.2d 287 (Fla. 1976).